WOODWARD GARBER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Garber v. Commissioner
Docket No. 15913-82.
United States Tax Court
T.C. Memo 1984-455; 1984 Tax Ct. Memo LEXIS 214; 48 T.C.M. (CCH) 959; T.C.M. (RIA) 84455; August 28, 1984. Thomas W. Roberts and V. Ruth Klette, for the petitioner. Eugene P. Bogner, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined an $815 deficiency in petitioner's 1979 Federal income tax. After concessions the sole issue for decision is whether petitioner is entitled to a nonbusiness bad debt loss under section 166 *215 [1] for unrefunded prepaid expenses arising out of a breach of contract. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Woodward Garber (hereinafter petitioner) resided in Cincinnati, Ohio, when he filed his petition herein. Petitioner timely filed his 1979 Federal income tax return (Form 1040) with the Internal Revenue Service Center, Covington, Kentucky. Petitioner, an architect by trade, enjoyed sailing boats as a pastime. Throughout his life, petitioner accumulated extensive experience sailing and racing various sizes of sailboats. Sometime prior to the year in issue, petitioner retired from his architecture practice and decided to pursue his lifelong ambition of sailing around the world. On November 16, 1978, petitioner executed a written agreement containing the terms under which he, and eight other individuals (collectively referred to as the crew), would sail around the world (hereinafter the agreement). The agreement provided that they would sail on The Lady Esther II with Harold O. Newell (hereinafter Newell) as the ship's captain. The cruise *216 was expected to last up to two years, and was to be funded by a "collective mutual sharing of expenses." Pursuant to the agreement each crew member, petitioner included, paid $16,000 in advance as his share of the expenses for the cruise. This did not include food costs which were estimated at $50 per week. The agreement further provided, in relevant part: 1. * * * should the vessel become totally and permanently disabled, that NEVERTHELESS the funds necessary to make ready this voyage are excepted from any refunds they may obtain pursuant to paragraph 2 contained hereunder. 2. NEWELL and THE LADY ESTHER II, agree that in the event the vessel, or Captain, should become totally and permanently disabled, each and every member of the CREW shall receive a full refund, prorated, in accord with the amount of funds originally paid in. This proration will contemplate the original cost of expenses undertaken by NEWELL and THE LADY ESTHER II to make ready for this voyage, which expenses are at this time in excess of Thirty Thousand ($30,000) Dollars. * * * 7. In the event any member of the CREW desires to depart the ship prior to the end of its voyage, while both the ship and the *217 captain are not permanently disabled, then that member agrees that his share of the mutual funding shall be FORFEITED, and further agrees and declares that he understands that this forfeiture shall be in the nature of liquidated damages, and not as a penalty. * * * 8. Notwithstanding anything hereinbefore to the contrary, should a departing member of the CREW, as defined in paragraph "7" above, depart the vessel and arrange for a replacement, then and in that event the monies held as liquidated damages by NEWELL and THE LADY ESTHER II, will be applied to the replacement, who may then undertake the continuation of the voyage, in place of the departing CREW member, without further cost. On November 17, 1978, The Lady Esther II set sail from Miami, Florida, for the cruise around the world. During the cruise petitioner became sick and experienced sudden weight loss. On April 5, 1979, petitioner left The Lady Esther II while it was in port at Tahiti and he returned to the United States. Petitioner was hospitalized in Cincinnati, Ohio, from April 16 through April 27. By October 1979, petitioner had recovered from his illness and desired to return to The Lady Esther II to complete *218 his voyage around the world. Unfortunately, The Lady Esther II was destroyed by fire and sank on October 21, 1979, while at anchor at Cocos (Keeling) Islands in the Indian Ocean. The Lady Esther II was insured and Newell received full payment for the loss of the boat. Petitioner contacted an attorney to find out whether he had a viable cause of action in terms of liability against Newell for failure to perform the contract.Petitioner was advised that he had a valid claim against Newell under paragraph two of the agreement; however, because of difficulty of collection, the attorney fees would greatly exceed $16,000 making it economically unfeasible to pursue the claim. On petitioner's 1979 tax return, he claimed a short-term capital loss of $13,062 as a nonbusiness bad debt deduction relating to his cruise on The Lady Esther II. In the statutory notice of deficiency, respondent disallowed the deduction in its entirety. OPINION The sole issue for decision is whether petitioner is entitled to a nonbusiness bad debt deduction under section 166 for the unrefunded prepaid expenses because the ship sank and performance under the contract became impossible. [2]
*219 Petitioner argues that the $16,000 payment made pursuant to the agreement was in the nature of a deposit and that when the ship was destroyed a bona fide debtor-creditor relationship was created by operation of law because performance under the contract became impossible. Thus, petitioner concludes that the debt became worthless in 1979 when it was determined by his attorney that litigation on the claim was economically unfeasible. On the other hand, respondent asserts that there was no debt owed to petitioner under the terms of the agreement. In the alternative, respondent maintains that petitioner has not shown that the debt become worthless in 1979. Section 166(a)(1) allows a deduction for "any debt which becomes worthless within the taxable year." The regulations further provide that "[o]nly a bona fide debt qualifies for purposes of section 166. A bona fide debt is a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money." Section 1.166-1(c), Income Tax Regs. Generally, a claim which arises out of breach of contract, prior to being reduced to judgment, does not create a debtor-creditor *220 relationship because the injured party has only an unliquidated claim for damages. Lewellyn v. Electric Reduction Co.,275 U.S. 243 (1927); Proesel v. Commissioner,77 T.C. 992, 1002 (1981). [3] Upon review of the record herein, we are convinced that at best petitioner only had an unadjudicated and unliquidated claim for breach of contract and, accordingly, no debtor-creditor relationship existed as required by section 166.
Petitioner argues that a debt was created the moment that the ship sank and was permanently disabled. We disagree. It is uncertain whether petitioner had a right to a refund. Paragraph seven of the agreement provided that any member who left the ship during the voyage forfeited his contribution and was not entitled to a refund. Even assuming that petitioner had a right to return and complete the cruise, at the time the ship sank, petitioner had not reboarded the ship. Thus, petitioner might be considered to be within the forfeiture provisions of the agreement. Moreover, the exact amount of any refund due is undeterminable. Under paragraph two of *221 the agreement, each member of the crew would be entitled to a partial refund of the $16,000 originally paid, in the event The Lady Esther II or its captain Newell became totally disabled. Each member was only entitled to a prorated portion of the amount paid, less the cost of expenses to make the ship ready for the voyage. Petitioner has failed to produce any evidence on what it actually cost to ready The Lady Esther II for the two-year voyage around the world. We need not speculate as to whether petitioner is entitled to a refund and, if so, the amount due him. It is enough to say that it is extremely questionable whether petitioner, even if he had brought suit for breach of contract, could have established any amount due him under the terms of the agreement. Petitioner has failed to establish that a bona fide debt exists between himself and Newell. Petitioner's evidence only shows that he may have had an unadjudicated and unliquidated claim for breach of contract damages against Newell. Such a claim does not create a "debt" arising at law. See Meyer v. Commissioner,T.C. Memo. 1975-349, affd. per curiam 547 F. 2d 943 (5th Cir. 1977); Lewellyn v. Electric Reduction Co.,supra; *222 Proesel v. Commissioner,supra at 1002. Accordingly, we conclude that petitioner's claim is not deductible as a bad debt under section 166. [4]
To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. Petitioner has not contended that the loss in question is deductible under section 165. Under section 165(c)(3) nonbusiness losses incurred by individual taxpayers, and not compensated by insurance or otherwise, are allowed only if they arise from "fire, storm, shipwreck, or other casualty, or from theft." In the instant case, The Lady Esther II was insured. Moreover, petitioner's loss arose out of contract and not from any of the above causes.↩
3. Accord, Dapice v. Commissioner,T.C. Memo. 1983-377↩.
4. Having held that there was no bona fide debt, we need not discuss respondent's alternate contention that it was not shown to be worthless in 1979.↩